11-2789-cv (L)
*Kroshnyi v. U.S. Pack Courier Services, Inc.*

# 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
## FOR THE SECOND CIRCUIT

––––––––––––

August Term, 2012

(Argued: April 5, 2013     Decided: November 4, 2014)

Docket Nos. 11-2789-cv, 11-4368-cv

––––––––––––

JAROSLAV KROSHNYI, PETER REDAJ, RADOMIR MALER, STEFAN HOLESA,
ROBERT ONDUSKO, ANDRZEJ SZYCOWSKI, JACOB IMAS, KEITH MCFARLAND,

*Plaintiffs-Appellees–*
*Cross-Appellants,*

PAVEL VYSOVSKY, JANA BULIKOVA,

*Plaintiffs–Cross-Appellants,*

JOZEF STOFA, MILAN PETRILAK, STANISLAV TELEKY, STANISLAV BULIK,
IRENEUSZ SAWCZYSZYN,

*Plaintiffs,*

–v.–

U.S. PACK COURIER SERVICES, INC., U.S. PACK EXPRESS, LTD.,
U.S. PACK NETWORK CORP.,

*Defendants-Appellants–*
*Cross-Appellees,*

PETER GLAZMAN, U.S. TRANSPORTATION SERVICES, INC.,

*Defendants–Cross-Appellees.**

———————

B e f o r e:

PARKER, CARNEY, *Circuit Judges*, and RAKOFF, *District Judge*.**

———————

Plaintiffs, all of whom worked as delivery drivers for one or more defendant corporations and their owner, Peter Glazman, brought this action alleging violations of the Fair Labor Standards Act ("FLSA"), Federal Insurance Contributions Act ("FICA"), New York Labor Law ("NYLL"), New York Franchise Sales Act ("FSA"), and other contract-related claims. The United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge*) granted summary judgment in favor of defendants on all of plaintiffs' federal claims under the FLSA and FICA, and (as relevant here) similarly granted judgment to defendants on plaintiffs' state law NYLL and contract claims. Following trial on the remaining FSA claims, a jury awarded certain plaintiffs damages, and the district court later granted those plaintiffs their related attorneys' fees and costs. All parties now appeal from the district court's judgment, challenging various pre- and post-trial orders.

We conclude, first, that because this case presented no novel issues of state law and was into its sixth year when the district court dismissed the federal claims, the court did not abuse its discretion in exercising supplemental jurisdiction over the remaining state-law claims. Next, we hold that the FSA's statute of limitations bars the claims of six plaintiffs who entered agreements with

—————————————

\* The Clerk of Court is directed to amend the caption of this case to conform to the above listing of the parties.

\*\* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

2

defendants as ostensible franchisees more than three years before filing suit.  We therefore **REVERSE** the FSA judgment in favor of those six plaintiffs.  We **AFFIRM** the FSA judgment, however, as to the remaining two plaintiffs.  We further **VACATE** the district court's award of attorneys' fees, and **REMAND** for recalculation of the fee award in light of plaintiffs' reduced recovery.

We hold also that the district court erred in ruling that the statute of frauds barred plaintiffs' breach of contract and NYLL claims for unpaid commissions:  a jury reasonably could find that these claims were based on oral employment agreements terminable at-will, and therefore capable of performance within one year of their making.  We therefore **VACATE** the grant of summary judgment for defendants on these claims and **REMAND** for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.

————————

RICHARD G. KASS, Bond, Schoeneck & King, PLLC, New York, New York, *for Defendants-Appellants–Cross-Appellees and Defendants–Cross-Appellees*.

ROBERT WISNIEWSKI, Robert Wisniewski & Associates P.C., New York, New York, *for Plaintiffs-Appellees–Cross-Appellants and Plaintiffs–Cross-Appellants*.

————————

SUSAN L. CARNEY, *Circuit Judge*:

This case calls on us to review the district court's resolution of several

questions of New York law under its supplemental jurisdiction—primarily, its

application of certain state statutes governing franchising and wages to plaintiffs'

3

claims for compensation arising from their work, from the late 1980s through

2000, as delivery drivers for one or more defendant corporations owned by

defendant Peter Glazman.  Plaintiffs contend that defendants systematically

undercompensated them for their work, purporting to treat them as franchisees

while reaping disproportionate profits at plaintiffs' expense.  On that basis,

plaintiffs filed this action in 2001, alleging violations of the Fair Labor Standards

Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"); the Federal Insurance Contribution Act, 26

U.S.C. §§ 3101, *et seq.* ("FICA"); the New York Labor Law, N.Y. Labor Law

§§ 190, *et seq.* ("NYLL"); the New York Franchise Sales Act, N.Y. Gen. Bus. Law

§§ 680, *et seq.* ("FSA")[1]; and various contract-related claims.

Six years into in this long-running litigation, the district court dismissed

plaintiffs' federal claims under the FLSA and FICA, but elected to exercise its

supplemental jurisdiction to adjudicate the remaining state law claims, as to

which dispositive motions had been submitted.[2]  The district court granted

---

[1] Although the statute is sometimes referred to as the "Franchise Act" rather than the "Franchise Sales Act," because the district court used the latter nomenclature (along with the common abbreviation "FSA"), we do the same here for the sake of consistency.

[2] The district court's opinions may be found at *Vysovsky v. Glassman*, No. 01 Civ. 2531 (LMM), 2007 WL 3130562 (S.D.N.Y. Oct. 23, 2007) ("*Vysovsky I*"); *Vysovsky v. Glazman*, 2011 WL

summary judgment to defendants on plaintiffs' NYLL and contract claims for unpaid commissions, holding that the statute of frauds precluded any action premised on defendants' alleged oral agreements to pay those commissions.[3] Plaintiffs then proceeded to trial on their FSA claims, which stemmed from defendants' alleged failure to comply with the Act's registration requirements and alleged use of fraudulent and unlawful practices in connection with the franchise relationship. After trial, a jury awarded damages to eight plaintiffs on these claims, and (as envisioned by the FSA), the court awarded those plaintiffs their related attorneys' fees.

Defendants now appeal the district court's FSA rulings in plaintiffs' favor, contending principally that it was error for the district court to exercise

---

1842297 (S.D.N.Y. May 11, 2011) ("*Vysovsky II*"); and *Vysovsky v. Glassman*, 2011 WL 4135037 (S.D.N.Y. Sept. 15, 2011) ("*Vysovsky III*").

[3] Plaintiffs originally brought two different categories of claims under the NYLL: (1) claims for unpaid wages or commissions under N.Y. Labor Law § 198; and (2) claims for unlawful deductions from pay under N.Y. Labor Law § 193. As noted above, the district court granted summary judgment to defendants on the section 198 claims, concluding that the oral contract upon which those claims were based was unenforceable under the statute of frauds. Thereafter, all but one plaintiff—Jana Bulikova—abandoned their section 193 claims completely. And although Bulikova proceeded to trial on her section 193 claim, the jury found for defendants on that claim. On appeal, Bulikova raises no argument related to the adverse judgment on her section 193 claim. Thus, the only NYLL claims at issue in this appeal are the section 198 claims dismissed at summary judgment. For convenience, we use the phrase "NYLL claims" to refer solely to plaintiffs' wage claims under section 198.

5

supplemental jurisdiction over these state-law claims, and that plaintiffs' claims were in any event barred by the statute of limitations. Plaintiffs cross-appeal, challenging *inter alia* the district court's ruling that the statute of frauds barred their NYLL and contract claims for unpaid commissions.

For the reasons set forth below, we find no abuse of discretion in the district court's exercise of supplemental jurisdiction. We further conclude that the statute of limitations barred the FSA claims of six of the eight plaintiffs. Although we affirm the FSA award as to the remaining two plaintiffs, we determine that the related attorneys' fee award must be recalculated to reflect that modification in the substantive award. Finally, we decide—contrary to the district court—that the statute of frauds does not preclude plaintiffs from pursuing their NYLL and contract claims against defendants. Accordingly, we remand to the district court for further proceedings on these state-law claims and for recalculation of the FSA-related attorneys' fees.

## BACKGROUND

### A.    The Parties and the Relevant Agreements

Defendant Peter Glazman (also known as Peter Glassman) owns or controls

6

defendants U.S. Pack Courier Services, Inc. ("USP Courier") and U.S. Pack Network Corp. ("USP Network") (collectively, "U.S. Pack" or "defendants"), corporations that provide package delivery services in the New York City metropolitan area.[4]  Glazman served as president of USP Network throughout the plaintiffs' relationship with the U.S. Pack companies starting in the late 1980s.  He became USP Courier's president after that corporation was formed in 1998.  USP Network and USP Courier share offices and employees.

Over the years, Glazman has sought to expand his package-delivery business through franchising (i.e., the granting of rights to others to engage in the company's business under a prescribed brand and marketing plan, in exchange for a fee).[5]  The New York Franchise Sales Act, N.Y. Gen. Bus. Law § 683(1),

---

[4] Two additional Glazman-controlled corporations, U.S. Pack Express, Ltd., and U.S. Transportation Services, Inc., were originally named as defendants in this action, but it is undisputed that none of the plaintiffs entered franchise agreements with either of these defendants.

[5] As relevant here, the FSA defines a "franchise" as a contract or agreement, either expressed or implied, and whether oral or written, between two or more persons by which:

(a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor, and the franchisee is required to pay, directly or indirectly, a franchise fee, or

requires anyone who intends to sell franchises in the State to file an offering prospectus before sales of, or even offers to sell, franchises.[6] Thus, in July 1996, USP Network filed a franchise offering prospectus with the New York State Department of Law. That franchise registration expired, however, on February 1, 1998. And although USP Courier—USP Network's successor—continued to sell franchises under similar terms, it never filed a franchise offering prospectus with the State.

A form Subscription Agreement ("SA"), which outlined the basic terms of the franchise arrangement, was attached as an exhibit to USP Network's 1996

---

(b) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate, and the franchisee is required to pay, directly or indirectly, a franchise fee.

N.Y. Gen. Bus. Law § 681(3).

[6] The FSA provides in relevant part:

It shall be unlawful and prohibited for any person to offer to sell or sell in this state any franchise unless and until there shall have been registered with the department of law, prior to such offer or sale, a written statement to be known as an 'offering prospectus' concerning the contemplated offer or sale, which shall contain the information and representations set forth in and required by this section.

*Id.* § 683(1).

8

prospectus. The SA required each subscriber to pay a $15,000 "subscription fee" in exchange for the right to receive delivery assignments through USP Network's central dispatch, and entitled each subscriber to a weekly paycheck based on accumulated commissions earned for deliveries made. Although subscribers could pay the entire subscription fee up front, many chose to pay in installments that were deducted weekly from their paychecks. Interest was due on the unpaid balance, however, and as of the publication of the 1996 prospectus, USP Network set the interest rate at 10% per annum.[7]

USP Network also charged subscribers a one-time "training fee" of $50, a $30 generic "weekly fee," and a "beeper fee" of $5 to $7.50 per week. Moreover, according to the prospectus, subscribers were personally responsible for a host of operational expenditures, including the purchase or rental of a white cargo van (for purchase, estimated at $15,000 to $20,000); insurance premiums (estimated at $2,500 to $4,000); vehicle registration fees and motor vehicle taxes (estimated at $60 to $110); gasoline (estimated at $25 per tank); and other items, such as

---

[7] The term of the SA was 20 years, but the SA permitted USP Network to cancel the agreement at any time within the first six months in its "sole discretion." J.A. 196.

9

uniforms, hand truck equipment, and maps.[8]  USP Network treated subscribers as

independent contractors and, accordingly, did not withhold any taxes from

subscribers' paychecks.

The SA provided that commission payments made by U.S. Pack to

subscribers for deliveries would be based principally on the "type of delivery

service requested [by the customer],"[9] and "the distance of the delivery."  J.A. 190.

A "Schedule of Amounts to be Paid to Subscribers," appended to the SA,

contained tables listing related payment amounts.  *Id.* at 226-93.

On various dates between 1987 and 2000, each plaintiff began to work as a

delivery driver for U.S. Pack.[10]  Almost all plaintiffs were recent Eastern European

immigrants, and many had limited proficiency in the English language.  In

---

[8] The SA is ambiguous as to the frequency with which subscribers would expect to incur these costs.

[9] According to the SA, U.S. Pack generally provided four types of delivery services: (1) "Urgent Exclusive"; (2) "Economy Rush"; (3) "Same Day 5:00 P.M. Special"; and (4) "Overnight." J.A. 190.

[10] As relevant here, plaintiff-appellant Andrzej Szycowski began working as a driver in the late 1980s;  Jana Bulikova and Pavel Vysovsky began working as drivers in 1995; Stefan Holesa and Radomir Maler in 1996; Jacob Imas in 1997; Jaroslav Kroshnyi, Robert Ondusko, and Peter Redaj in 1998; and Keith McFarland in 2000.  As discussed *infra* note 13, additional plaintiffs were named in the original complaint, but were dismissed from the case for various reasons and did not appeal.

deposition testimony or at trial, most plaintiffs acknowledged having signed

some form of written agreement with U.S. Pack; some denied, however, that the

document signed was the SA attached to the USP Network offering prospectus.[11]

Some plaintiffs also testified that defendants did not give them sufficient time to

review the documents they were asked to sign and did not provide them copies

of the documents, even when plaintiffs specifically requested them.  In total,

defendants produced signature pages signed by only six plaintiffs.

The parties agree that defendants promised, in one form or another, to pay

plaintiffs a fee for each delivery completed, rather than an hourly wage.  They

disagree, however, on how that fee was to be calculated.  Plaintiffs contend that

defendants orally promised to pay them a 60% commission on each delivery—

that is, 60% of whatever the customer paid U.S. Pack for the delivery.[12]  Several

plaintiffs testified that—although they sometimes suspected they were not

receiving the promised rates—each time they asked defendant Glazman about

---

[11] Several plaintiffs worked for U.S. Pack before USP Network filed its 1996 offering prospectus.  At least one of these plaintiffs was asked to sign a new SA with USP Network in 1996; he had previously signed a different agreement in 1987.

[12] Plaintiff Kroshnyi testified that Milan Cuba, a U.S. Pack supervisor, told him that he would receive a 65% commission, but Kroshnyi understood that everyone else received 60%.

11

their pay, Glazman reaffirmed that U.S. Pack paid its drivers 60% commissions.

Defendants contend, however, that there was no agreement, oral or otherwise, to

pay 60% commissions. Presumably referring to the "Schedule of Amounts to be

Paid to Subscribers" appended to the SA, Glazman testified at trial that there was

"a price list which we agreed to pay at a minimum to the driver," but he qualified

the assertion by saying further that "the terms changed all the time, depends on

the client you acquire or the work you do." J.A. 684:12-16.

## B.  Procedural History

In 2001, plaintiffs filed their initial complaint,[13] alleging principally

---

[13] Plaintiffs joined and departed the suit as the case progressed. For example, Jozef Stofa and Ireneusz Sawczyszyn were dismissed from the case before the district court ruled on the summary judgment motion. The district court later granted summary judgment against Stanislav Bulik and Stanislav Teleky on their FSA claims, concluding that their claims were barred by the statute of limitations because Bulik and Teleky stopped working for U.S. Pack in April 1997 and October 1997, respectively. Neither Bulik nor Teleky pursued any claims at trial, and neither is a party to this appeal. The district court similarly granted summary judgment against Jana Bulikova on her FSA claims, also on statute of limitations grounds. Bulikova does not challenge that ruling on appeal, but she joins in the cross-appeal from the grant of summary judgment on the NYLL and contract claims based on unpaid commissions.

In the midst of trial, the district court also dismissed the claims of two plaintiffs—Pavel Vysovsky and Milan Petrilak—who were unable to obtain visas to come to the United States for trial. Vysovsky raises no arguments related to the dismissal of his FSA claims, but joins in the arguments related to the NYLL and contract claims. Petrilak is not a party to this appeal. Thus, only those plaintiffs listed in note 10, *supra*, are named appellants whose rights are being adjudicated in this appeal.

violations of the FLSA and its state counterpart, the NYLL, as well as violations of

the FSA and breach of contract. Plaintiffs averred that, despite defendants' desire

to treat them as "independent contractors" for tax and labor law purposes, they

were actually defendants' "employees," because defendants controlled the

manner in which they performed their work. Accordingly, plaintiffs invoked the

protections of the FLSA and the NYLL. As relevant here, plaintiffs alleged that

defendants violated section 198 of the NYLL, because defendants failed to pay

them all the wages they were owed—that is, the difference between the 60%

commissions they were promised and the amounts they were actually paid for

each delivery. The same allegations formed the basis for plaintiffs' breach of

contract claims.

Additionally, plaintiffs claimed that defendants violated two provisions of

the FSA: section 683(1), which prohibits a franchisor from selling a franchise

without first registering an "offering prospectus" with the New York State

Department of Law (the "prospectus claim"); and section 687(2), which prohibits

fraud in connection with the offer or sale of a franchise (the "fraud claim"). As to

the fraud claim, plaintiffs alleged that, to induce plaintiffs' purchase of the

franchises, defendants fraudulently represented that plaintiffs would earn 60% commissions on deliveries.

Over the course of the proceedings, the issues narrowed. In 2007, the district court granted defendants' motion for summary judgment on all federal claims.[14] By this point, the district court had presided over the case for six years, developing an intimate knowledge of the parties and the governing case law. Discovery was complete, and the case was ready for trial. The district court therefore elected (without objection) to exercise supplemental jurisdiction over the remaining state-law claims. The court then granted summary judgment for defendants on the breach of contract and the NYLL claims, concluding that the claims were barred by the statute of frauds because they were based on an alleged oral agreement to pay commissions that lacked an express termination provision and thus (in the district court's view) could not be performed within one year. *Vysovsky I*, 2007 WL 3130562, at *7-8, *13.[15]

_____

[14] The district court dismissed the FLSA claims because plaintiffs fell under that statute's "Motor Carrier Exemption." *Vysovsky I*, 2007 WL 3130562, at *5. The district court dismissed plaintiffs' FICA claims brought under 26 U.S.C. § 3102, because section 3102 does not provide a private right of action. *Id.* Plaintiffs do not challenge these rulings on appeal.

[15] The court dismissed the other common law claims based on plaintiffs' failure to contest

After the court's summary judgment ruling, eight plaintiffs (Holesa, Imas, Kroshnyi, Maler, McFarland, Ondusko, Redaj, and Szycowski) proceeded to trial on the remaining FSA claims. The jury ultimately found the corporate defendants liable on all of those claims, except McFarland's prospectus claim under section 683(1). It awarded damages ranging from $3,180 to $27,839 per claim. The jury found Glazman not liable, however, on the claims made against him in his individual capacity.

After trial, defendants moved pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law, arguing *inter alia* that (1) plaintiffs' FSA claims were barred by the FSA's three-year statute of limitations, and (2) the jury's award of damages on the FSA claims contravened the court's jury instructions, which capped FSA damages at rescission.[16] The district court denied the motion in large part, *see Vysovsky II*, 2011 WL 1842297, at *2-6, but made some

---

defendants' motion for summary judgment as to those claims. *Vysovsky I*, 2007 WL 3130562, at *6. On appeal, plaintiffs do not challenge that dismissal, other than of their claims for breach of contract.

[16] Before the case went to the jury, defendants moved for judgment as a matter of law on the FSA claims, but the district court deferred ruling on the motion until after the jury returned a verdict.

15

modifications to the damages awarded.[17]  Finally, pursuant to the FSA, the district

court awarded attorneys' fees to the prevailing plaintiffs.[18]  The sum awarded—

$55,885—equaled the roughly 33% contingency fee all plaintiffs agreed to pay

under their retainer agreements.  *Vysovsky III*, 2011 WL 4135037, at *1.

Both parties now appeal.[19]  Defendants argue primarily that (1) the district

court abused its discretion in exercising supplemental jurisdiction over the state-

law claims; (2) the judgments in favor of six plaintiffs should be reversed on the

ground that those plaintiffs' FSA claims are time-barred; and (3) no plaintiff is

entitled to any damages under the FSA because, in accordance with the district

---

[17] As relevant here, the district court vacated the award of damages on Maler's and Holesa's prospectus claims.  *See Vysovsky II*, 2011 WL 1842297, at *3-4.  Those two plaintiffs entered franchise agreements in September 1996, when U.S. Pack's offering prospectus was on file with the New York State Department of Law.  *Id.*  Maler and Holesa do not challenge this ruling on appeal.

[18] The "Civil remedies" section of the FSA provides that persons who commit a "willful and material" violation of sections 683 or 687 are liable for the franchisee's "reasonable attorney fees and court costs."  N.Y. Gen. Bus. Law § 691(1).  In this context, a New York court has held that "willful" means "no more than voluntary and intentional, as opposed to inadvertent."  *Reed v. Oakley*, 661 N.Y.S.2d 757, 759 (Sup. Ct. 1996).  In any event, defendants do not challenge the district court's conclusion that the FSA authorizes an award of attorneys' fees under the circumstances presented here.

[19] The court entered judgment against defendant U.S. Transportation Services, Inc., as well as the U.S. Pack defendants, but the notice of appeal does not list U.S. Transportation Services, Inc., as an appellant.

court's jury instructions, any such damages are capped at rescission and the evidence at trial showed that each plaintiff made a "net profit" on his franchise.

The eight plaintiffs who prevailed at trial on their FSA claims, as well as Bulikova and Vysovsky, cross-appeal principally from the court's summary judgment ruling on their NYLL and breach of contract claims. Plaintiffs argue, *inter alia*, that the statute of frauds does not bar these claims because, in their view, the oral agreement to pay 60% commissions is an at-will employment contract that could be performed within one year of its making. In addition, plaintiffs appeal the award of attorneys' fees, arguing that the district court erred in its calculation of the fee award. We address each of these arguments below.

## DISCUSSION

### A. Exercise of Supplemental Jurisdiction

Defendants contend that the district court abused its discretion by retaining supplemental jurisdiction over plaintiffs' state-law claims after dismissing all federal claims at the summary judgment stage. Although defendants did not object to the district court's exercise of jurisdiction at that time, they now argue that the court should not have retained jurisdiction because it interpreted the FSA

17

in a novel way.  Since a ruling in defendants' favor would dispose of the appeal

and cross-appeal, we address this issue first.

We review a district court's exercise of supplemental jurisdiction over state-

law claims for abuse of discretion.  *See Lundy v. Catholic Health Sys. of Long Island*

*Inc.*, 711 F.3d 106, 118 (2d Cir. 2013); *see also Valencia ex rel. Franco v. Lee*, 316 F.3d

299, 305 (2d Cir. 2003).  District courts have supplemental jurisdiction over state-

law claims that "form part of the same case or controversy" as other claims over

which the court has original jurisdiction.  28 U.S.C. § 1367(a).  A court "may

decline to exercise supplemental jurisdiction," however, if, among other factors,

"the claim raises a novel or complex issue of State law," or "the district court has

dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c).  Courts

must consider "the values of judicial economy, convenience, fairness, and comity"

when deciding whether to exercise supplemental jurisdiction.  *Carnegie-Mellon*

*Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

We conclude that the district court did not abuse its discretion when it

decided that the "advanced stage of the litigation and the Court's long familiarity

with the issues in the case, combined with the likely hardship to both parties

18

should plaintiff be forced to re-file in state court" weighed in favor of exercising supplemental jurisdiction. *Vysovsky I*, 2007 WL 3130562, at *6. By the time the federal claims were dismissed, the case had been before the district court for over six years. Furthermore, discovery had been completed, dispositive motions had been submitted, and the case would soon be ready for trial. *See Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990) (affirming district court's retention of supplemental jurisdiction "given the extensive proceedings involving the pendent claims prior to the dismissal of the federal claim"). Finally, although we ultimately conclude that the district court erred in some of its interpretations of New York law, the state-law issues were not so groundbreaking as to preclude the exercise of jurisdiction, especially in light of the circumstances in which the discretionary decision arose. *See Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 388 (2d Cir. 2000). We therefore affirm the district court's decision to exercise supplemental jurisdiction over plaintiffs' state-law claims, and now proceed to the merits of this appeal.

## B.    FSA Claims

Defendants also appeal from the judgments entered against them on

plaintiffs' FSA claims.[20]  They contend that the FSA's three-year statute of

limitations runs from the inception of the franchise agreement, thereby barring

any recovery for the six plaintiffs—Holesa, Imas, Maler, Ondusko, Redaj, and

Szycowski—who entered into franchise agreements before March 26, 1998.

Defendants also argue that, in any event, none of the plaintiffs can recover

damages on his FSA claims because the Act limits plaintiffs' remedies to

rescission of the franchise agreement and return to the status quo ante.  Because

each of the plaintiffs is alleged to have collected more revenue from his franchise

than he paid in franchise fees, defendants contend, applying the remedy of

rescission would actually require plaintiffs to return their "net profit" to U.S.

Pack.  We address these two arguments in turn.

### 1.    Statute of Limitations

The FSA's statute of limitations provides that an action "shall not be

maintained to enforce a liability created under this section unless brought before

the expiration of three years after the act or transaction constituting the violation."

N.Y. Gen. Bus. Law § 691(4).  Plaintiffs filed their complaint in this action on

_____

[20] As noted above, the jury found the individual defendant Glazman not liable on these claims.

20

March 26, 2001, alleging that defendants: (a) sold them franchises without having

an offering prospectus registered with the State, in violation of section 683(1) (the

prospectus claim); and (b) committed fraud in connection with the sale of

franchises, in violation of section 687(2), because they induced plaintiffs to enter

franchises with a false promise to pay 60% commissions for deliveries (the fraud

claim).  For both claims, therefore, the "act or transaction constituting the

violation" occurred when the franchises were purchased.  *See United Magazine Co.*

*v. Murdoch Magazines Distribution, Inc.*, 146 F. Supp. 2d 385, 407 (S.D.N.Y. 2001)

("*United Magazine*"), *aff'd*, 279 F. App'x 14, 19 (2d Cir. 2008) (holding that "the

limitations period begins to run at the time that the parties first enter into the

franchise agreement"); *Leung v. Lotus Ride, Inc.*, 604 N.Y.S.2d 65, 67 (1st Dep't

1993) (FSA claims based on "franchise agreements that were executed more than

three years prior to commencement of the action" properly dismissed as

untimely); *see also Bayit Care Corp. v. Tender Loving Care Health Care Servs. of Nassau*

*Suffolk, LLC*, 843 F. Supp. 2d 381, 385 (E.D.N.Y. 2012) ("In assessing the timeliness

of claims made under the FSA, courts have generally determined that the three-

year limitations period begins to run when the franchise contract is entered into,

21

and that continuous violations do not toll the statute of limitations." (internal quotation marks omitted)).  As a result, the FSA claims of the six plaintiffs who purchased their franchises prior to March 26, 1998, fall outside the FSA's three-year limitations period.

Plaintiffs make two arguments in support of their contention that the FSA claims at issue were nonetheless timely filed.  First, they argue that the statute of limitations began to run anew when their franchises were "transferred" from USP Network to USP Courier in April 1999—less than two years before plaintiffs filed their complaint in March 2001, and well within the three-year limitations period. When the transfer occurred, U.S. Pack provided delivery drivers with a document entitled "Rules and Regulations of US Pack Drivers."  The document purported to be an "Agreement" between USP Network, USP Courier, and the driver. According to plaintiffs, entry into this transfer agreement reflected the start of a new franchise relationship.

In our view, however, plaintiffs' transfer theory fails at the start.  The first paragraph of the transfer agreement provides that "[n]othing contained in this Agreement is intended to alter . . . your Subscription Agreement with US PACK

NETWORK CORP. and/or US PACK COURIER SERVICES, INC, as the case may

be." J.A. 328. Moreover, plaintiffs and defendant Glazman testified that there

was no change in the day-to-day operations of U.S. Pack or its relationship with

its drivers as a result of the transfer. Plaintiffs have pointed to no evidence

establishing that the alleged "transfer" from USP Network to USP Courier

constituted the beginning of a new franchise agreement that would reset the

statute of limitations. *See United Magazine*, 146 F. Supp. 2d at 407 (rejecting

plaintiffs' claim that changes to their franchise agreements restarted the

limitations period); *see also Bayit Care Corp.*, 843 F. Supp. 2d at 385 (noting that,

under the FSA, the "definition of 'offer to sell' excludes 'the renewal or extension

of an existing franchise where there is no interruption in the operation of the

franchised business by the franchisee'" (quoting N.Y. Gen. Bus. Law § 681(11)).

We therefore reject plaintiffs' timeliness argument made on this ground.

Second, plaintiffs claim that because most of them did not pay their

franchise fee in a lump sum when they first entered an agreement with U.S. Pack,

but rather paid the fee through weekly deductions from pay, defendants

committed a continuing violation of the FSA each time they deducted a franchise

fee payment. Therefore, plaintiffs argue, any plaintiff whose paycheck reflected a deduction for a franchise fee installment payment after March 26, 1998, has a timely claim.

This argument also fails to persuade. Although we have not yet addressed the issue in a precedential opinion, at least one of the district courts in our Circuit has held (in a decision we later affirmed by summary order) that under the FSA, "continuous violations do not toll the statute of limitations." *United Magazine*, 146 F. Supp. 2d at 407. Plaintiffs have failed to point us to any New York authority supporting a contrary interpretation, *cf. Fantastic Enters., Inc. v. S.M.R. Enters., Inc.,* 540 N.Y.S. 2d 131, 134 (Sup. Ct. 1988) (rejecting plaintiffs' argument that the FSA imposes a continuing obligation on franchisors, because "to find otherwise would serve to emasculate the statute of limitations"), and we see no reason to depart from *United Magazine*'s reasoning under the circumstances presented here. Indeed, this result is congruent, in our view, with the language and purpose of the FSA, which requires certain disclosures and prohibits fraud in connection with the "offer" and "sale" of franchises, but does not seek to regulate the ongoing operations of a franchise. *See* N.Y. Gen. Bus. Law §§ 683(1), 687(2),

691(1); *see also Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 21 (2d Cir. 1988);

David J. Kaufmann & David W. Oppenheim, Practice Commentaries to New York

Franchise Act, N.Y. Gen. Bus. Law § 681 *et seq.*, at VII(E) (McKinney 2013).

Thus, the statute of limitations bars the claims of all plaintiffs who

purchased franchises from U.S. Pack before March 26, 1998. Only Ondusko,

Kroshnyi, and McFarland bought their franchises after this date. Ondusko,

however, purchased his franchise not from U.S. Pack, but from another driver,

Vysovsky. Therefore, Ondusko's claim is derivative of Vysovsky's. And because

Vysovsky purchased his franchise before March 26, 1998, Ondusko's claim is also

time-barred.

In sum, only Kroshnyi and McFarland have asserted timely FSA claims.

We therefore reverse the district court's judgment with respect to the FSA claims

of Holesa, Imas, Maler, Ondusko, Redaj, and Szycowski.

### 2. Available Remedies

We now consider U.S. Pack's argument that the remaining FSA plaintiffs,

Kroshnyi and McFarland, are nevertheless barred from recovering damages on

their FSA claims because the Act limits their remedies to rescission.

25

The remedies provision of the FSA provides in relevant part:

> [a] person who offers or sells a franchise in violation of [various sections of the FSA, including sections 683 and 687] is liable to the person purchasing the franchise for damages and, if such violation [w]as willful and material, for rescission, with interest at six percent per year from the date of purchase, and reasonable attorney fees and court costs.

N.Y. Gen. Bus. Law § 691(1). Defendants contend that this provision limits plaintiffs' remedies under the FSA to rescission (i.e., the unwinding of the franchise agreement and the refunding of the franchise fee, minus any profits earned). Accordingly, defendants maintain, section 691(1) prohibits the award of damages to plaintiffs—like Kroshnyi and McFarland—who allegedly earned a net profit on their franchise. Building on that premise, defendants argue that the district court erred when it refused to overturn the jury's damages awards on the FSA claims and grant judgment for defendants as a matter of law.[21]

Defendants offer primarily two arguments to support their reading of the

---

[21] We review de novo a district court's denial of a motion for judgment as a matter of law, "applying the same standards as the district court to determine whether judgment as a matter of law was appropriate." *Izzarelli v. R.J. Reynolds Tobacco Co.*, 731 F.3d 164, 167 (2d Cir. 2013). In doing so, we do not assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute our judgment for that of the jury. *See, e.g.*, *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 120 (2d Cir. 1998).

FSA's remedies provision.[22]   First, because section 691(1) provides for "damages" based on any violation of the FSA, but provides for "rescission" only in cases of "willful and material" violations, defendants claim that rescission must be the maximum remedy available under the Act.  It would not make sense, the argument goes, to permit plaintiffs to recover damages that would put them in a better position than a rescission remedy, because plaintiffs need not demonstrate willfulness or materiality to obtain damages, but *must* do so to rescind the agreement.

Second, defendants cite a related provision of the statute, section 691(2), which provides that a defendant-franchisor can avoid liability for FSA violations altogether if, before the initiation of suit, the franchisor contacts the plaintiff-franchisee and offers "to refund the consideration paid together with interest at six percent per year from the date of payment, less the amount of income earned by the franchisee from the franchise."  N.Y. Gen. Bus. Law § 691(2).  Defendants claim that this provision demonstrates that the FSA does not contemplate

_____

[22] Defendants also argue that the damages available to a plaintiff who succeeds on an FSA fraud claim under section 687 are the same as the damages available for a common law fraud claim:  that is, return to the status quo ante.  As explained *infra*, however, we need not resolve this question to dispose of the instant appeal, and do not address it further.

damages for plaintiffs who earned more income from their franchise than they paid in franchise fees (i.e., those who earned a "net profit"). According to defendants, the rescission offer under section 691(2) would not provide any benefit to a plaintiff who made a "net profit" because the income earned from the franchise would exceed the consideration paid; under those circumstances, rescission would result only in the plaintiff-franchisee having to hand over her profits to the defendant-franchisor. To avoid this "absurd" result, defendants argue, we should interpret section 691(1) as limiting recovery under the FSA to plaintiffs who suffered a net loss on their franchise. Appellants' Br. at 15.

In our view, however, we need not delve into this thorny question of New York law to resolve the instant appeal. Even assuming *arguendo* that defendants' interpretation of section 691(1) is correct, and rescission is the maximum remedy available under the statute, we see no reason to disturb the jury's verdict in favor of Kroshnyi and McFarland on their FSA claims. Indeed, as explained below, because the district court instructed the jury in accordance with U.S. Pack's own view of the law,[23] the jury's decision to award damages to these plaintiffs under

_____

[23] Plaintiffs, for their part, disagree with defendants' narrow reading of the FSA's remedies provision and argue (for the first time on appeal) that the district court erred when it

the FSA turns on the jurors' implied *factual findings* concerning the calculation of plaintiffs' profits and losses over the course of the franchise arrangement—findings that are entitled to substantial deference on appeal.

With respect to the prospectus claim, for example, the district court instructed the jury that it could award rescission if the failure to register was willful and material, but "[i]f you find that . . . U.S. Pack's failure to register the offering prospectus was not willful and material, then those plaintiffs are entitled to an award of damages *short of rescission*." J.A. 817 (emphasis added). Moreover, in connection with the fraud claim, the court explained to the jury:

> Damages for fraud must be in an amount intended to restore the plaintiffs to the position they occupied before the commission of the fraud. This means that plaintiffs' damages should be an amount equal to the net out-of-pocket expenses, which each plaintiff incurred as a result of deciding to participate in the franchise. *If you find that any or all of the plaintiffs made a net profit on their franchise, then they are not entitled to damages for their claim of fraud.*

J.A. 819 (emphasis added). After receiving these instructions, the jury awarded

---

instructed the jury that FSA damages are capped at rescission. Because plaintiffs failed to object to the jury instructions in the court below, however, they have waived this argument on appeal, *see SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 343 (2d Cir. 2004) ("[a] party who fails to object to a jury instruction at trial waives the right to make that instruction the basis for an appeal" (internal quotation marks omitted)), and we perceive no manifest injustice that would warrant reaching this waived argument here.

Kroshnyi $4,325 on his prospectus claim and $7,783 on his fraud claim. It awarded McFarland nothing on his prospectus claim and $3,640 on his fraud claim.

On appeal, defendants contend that, because each plaintiff received more money in commissions from U.S. Pack than he paid in franchise fees, the jury's damages award is inconsistent with both the court's instructions and the evidence adduced at trial.[24] Appellants' Br. at 19. But what defendants are really asking us to do is to reject the jury's implicit findings of fact that plaintiffs ultimately suffered a "net loss" on their franchises, and to grant judgment notwithstanding the verdict. That we may do "only if the evidence viewed in the light most favorable to the non-movants, without considering credibility or weight, reasonably permits only a conclusion in the movant's favor." *Doctor's Assocs., Inc.*

---

[24] Defendants also argue, almost in passing, that there was insufficient evidence adduced at trial to establish a causal link between defendants' alleged violation of the FSA's registration requirements and any harm that befell plaintiffs. This failure of proof, defendants contend, provides another ground on which to reverse the jury's verdict on plaintiffs' prospectus claims. We disagree, at least with respect to Kroshnyi (as explained *supra*, McFarland was awarded no damages on his prospectus claim, and no other plaintiff filed a timely claim). Kroshnyi purchased his franchise in May 1998, when no relevant prospectus was on file with the Attorney General. In our view, a reasonable jury could infer that defendants deliberately failed to meet their statutory obligations in this regard in an effort to conceal their unfair business practices and facilitate sales to unsuspecting franchisees.

30

*v. Weible*, 92 F.3d 108, 111-12 (2d Cir. 1996) (internal quotation marks omitted).

Indeed, there must be "such a complete absence of evidence supporting the

verdict that the jury's findings could only have been the result of sheer surmise

and conjecture." *Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 542 (2d

Cir. 1994) (internal quotation marks omitted). That is not this case.

Defendants contend that the franchise fees charged to each plaintiff were

capped at $15,000. But because both Kroshnyi and McFarland paid the fees

through weekly deductions from pay[25] (along with 10% interest on any unpaid

balance), it appears neither plaintiff knew exactly how much he was charged in

total, and the evidence was open to interpretation.[26] Furthermore, in deciding

_____

[25] According to records produced at trial, Kroshnyi grossed approximately $28,786 in commissions in 1998, $46,857 in 1999, and $8,856 in 2000. McFarland grossed roughly $37,000 in commissions over a two-and-one-half-year period from February 2000 to July 2002, although the exact amount earned during each of those years is less than clear. Plaintiffs earned those commissions, however, over the course of a brutal work schedule. Kroshnyi testified that when he began his job at U.S. Pack, he was working twelve to seventeen (and, at times, as much as twenty-four) hours a day, five days per week, and sometimes weekends as well. McFarland testified that he worked on U.S. Pack business approximately twelve to fifteen hours a day, seven days a week.

[26] We note also that, to the extent defendants are correct that the proper calculation of rescissory damages under section 691(1) should be informed by the formula provided for pre-suit rescission offers under section 691(2), the starting point for calculating plaintiffs' damages here would be the $15,000 paid in franchise fees *plus* six percent interest per year from the date of payment (here, $900 per year over a period of approximately eight to ten years). *See* N.Y. Gen. Bus. Law § 691(2) (stating that a "rescission offer" is an offer "to refund the consideration paid

whether either plaintiff made a "net profit" on his franchise, the jury could

properly consider the significant operational expenses that each plaintiff incurred

in the course of running his franchise, such as the rental of a cargo vehicle,

insurance premiums, vehicle maintenance, taxes, tolls, and fuel, as well as various

other expenses like the rental of a radio and beeper, and the cost of uniforms and

equipment.  Indeed, the evidence at trial showed that U.S. Pack deducted large

sums from Kroshnyi and McFarland's weekly commission checks for vehicle

rental, vehicle maintenance, the lease of radios and beepers, and other charges.[27]

---

*together with interest at six percent per year from the date of payment*, less the amount of income earned by the franchisee from the franchise" (emphasis added)).  Thus, if section 691(2)'s formula controls the calculation (as defendants suggest), in assessing whether plaintiffs made a "net profit," one must consider whether plaintiffs netted more income from their franchise than the total amount they paid in franchise fees *plus interest*.

[27] Kroshnyi testified that $271.15 was deducted from his pay each week for his vehicle rental, and $24.85 per week for his radio and beeper.  McFarland testified that as much as $271 was deducted weekly for vehicle rental, $50 for vehicle maintenance, and $12 for the lease of his radio.  McFarland also testified that he was sometimes charged a deduction for parking tickets, and that he was once required to pay out of pocket for damage to his rented cargo van incurred after an accident he claimed was not his fault.

According to defendant Glazman's testimony, most drivers were charged about $250-270 per week for their vehicle rental and franchise fee, so the $271 amount that both plaintiffs recalled might, in actuality, have represented the combined cost of the franchise fee and rental. But what matters for our purposes is that a reasonable jury could have resolved this factual dispute in plaintiffs' favor, finding that U.S. Pack charged each man as much as $271.15 per week for vehicle rental alone.

And while neither plaintiff testified about the specific amounts expended on fuel, insurance premiums, uniforms, equipment, taxes, and the like, the jury had before it the 1996 offering prospectus and SA, which stated that drivers bore responsibility for these expenses and provided an estimated cost range for each.[28] *See* J.A. 162-63.

Considering all of the evidence in the light most favorable to plaintiffs—as we must—we cannot say that a reasonable juror would have been "compelled" to conclude that plaintiffs made a net profit on their franchises. *See Tuccio v. Marconi*, 589 F.3d 538, 540 (2d Cir. 2009) (stating that judgment as a matter of law is warranted "only if, viewing the evidence in the light most favorable to the non-moving party, a reasonable juror would be compelled to find in favor of the moving party"); *see also Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 496 (2d Cir. 1995) ("[W]hen reviewing the sufficiency of the damages evidence, we are guided

---

[28] To take but one example, the offering prospectus estimated that, as of 1996, gasoline for cargo vans would cost subscribers approximately $25 a tank (a conservative estimate, even for the times). To the extent the jury credited Kroshnyi and McFarland's testimony that they spent up to 15-24 hours per day making deliveries throughout the tri-state area and beyond, the jury could reasonably infer that each plaintiff used as much as a tank of gasoline per workday, providing a basis for the jury reasonably to attribute thousands of dollars to each plaintiff in fuel costs alone.

by the principle that if a plaintiff has shown it more likely than not that it has suffered damages, the amount of damages need only be proved with reasonable certainty.").  Therefore, assuming without deciding that defendants are correct that the FSA caps damages at rescission and that plaintiffs who make a net profit on their franchises have no remedy under the statute, we nonetheless affirm the district court's award of damages in favor of Kroshnyi and McFarland on their FSA claims.[29]

### 3.    Attorneys' Fees

The FSA provides that a prevailing plaintiff is entitled to recover reasonable attorneys' fees and costs.  N.Y. Gen. Bus. Law § 691(1).  On cross-appeal, plaintiffs argue that the district court abused its discretion because it failed to calculate the "lodestar" value when awarding fees.  Because we reverse the judgments entered in favor of six of the plaintiffs on their FSA claims, as discussed above, we must

---

[29] Although we affirm the FSA verdicts in favor of Kroshnyi and McFarland, we note that, to the extent there is any overlap between those FSA claims and any of the revived contract or NYLL claims pursued upon remand, the district court must ensure against duplicative recoveries.  For example, the district court might, in its discretion, require Kroshnyi or McFarland to disclaim their FSA awards before they may recover additional damages on any successful contract or NYLL claims.  That, however, is a question we leave to the district court to consider in the first instance, if necessary.

remand for a recalculation of attorneys' fees in any event.  Upon remand, we

strongly suggest that the district court begin its calculation by first performing a

lodestar analysis, which calculates reasonable attorneys' fees by multiplying the

reasonable hours expended on the action by a reasonable hourly rate.  *See Perdue*

*v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-55 (2010) (addressing lodestar analysis

under federal fee-shifting statute); *Matakov v. Kel-Tech Const., Inc.*, 924 N.Y.S.2d

344, 345-46 (1st Dep't 2011) (applying the lodestar method under New York law).

### C.    Breach of Contract and NYLL Claims

We turn next to plaintiffs' argument on cross-appeal that the district court

erred when it granted summary judgment for defendants on the breach of

contract and NYLL claims, concluding that the statute of frauds barred the claims.

Almost all plaintiffs testified that Glazman and others orally promised to pay

them a 60% commission for each package delivered.[30]  Defendants deny the

existence of this agreement.  According to Glazman, he "would not disclose" to

drivers the amounts that customers paid U.S. Pack for deliveries because it was a

---

[30] The lone exception, Kroshnyi, testified that when he asked a supervisor whether U.S. Pack paid 60% commissions (a number he had heard from other drivers), the supervisor replied, "[F]or you it's 65 [percent]."  Kroshnyi believed he was promised more because the supervisor "always said [he] did [a] good job."  J.A. 504.

35

"company secret."  J.A. 645.  Instead, drivers were paid according to a "price list

which we agreed to pay at a minimum to the driver, but the terms changed all the

time."  *Id.* at 684.

### 1. Statute of Frauds Defense

### a. Amendment of Answer

As an initial matter, plaintiffs argue that the district court abused its

discretion by permitting defendants to amend their answer to assert, somewhat

belatedly, a statute of frauds defense.  The Federal Rules provide that courts

"should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P.

15(a)(2).  Indeed, "[i]n the absence of any apparent or declared reason . . . such as

undue delay, bad faith or dilatory motive on the part of the movant . . . [or] undue

prejudice to the opposing party by virtue of allowance of the amendment . . . the

leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371

U.S. 178, 182 (1962).  We review the district court's grant of leave to amend for

abuse of discretion, and, "[e]xcept when required by the demands of justice in the

particular case,  . . . almost invariably defer to the discretion exercised by the trial

court."  *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).

36

Plaintiffs filed their second (and final) amended complaint on June 21, 2004. Defendants responded with their answer on August 11, 2004. Not until November 15, 2005—more than a year after filing the answer and four months after the close of discovery—did defendants move to amend their answer to assert the statute of frauds defense (as well as the defenses of estoppel, release, and waiver). Defendants filed their motion to amend jointly with their motion for summary judgment.

Plaintiffs contend that they suffered "extreme" prejudice from the late amendment because they had no opportunity to conduct discovery about whether there were any terms in the oral agreement that would prevent it from being performed within one year. Appellees' Reply Br. at 18. They also argue that they were prejudiced because if the statute of frauds defense had been asserted sooner, it would have affected their settlement calculations. We are not persuaded.

In our view, plaintiffs suffered little, if any, prejudice from the grant of leave to amend. Discovery was not necessary because each plaintiff was a party to the alleged oral agreement and therefore, presumably, well aware of the

agreement's terms.  In any event, the district court explained that "[e]xtensive discovery was conducted on the circumstances surrounding the oral and written agreements."  *Vysovsky I*, 2007 WL 3130562, at *3.  Because defendants raised the statute of frauds defense in their motion for summary judgment, plaintiffs had an adequate opportunity to argue against its application to this case.  And although the late assertion of the defense may have had an effect on plaintiffs' assessment of settlement value, plaintiffs still had ample opportunity to settle between November 2005, when defendants moved to amend and for summary judgment, and October 2007, when the court issued its decision on both motions.

Because plaintiffs have neither suffered significant prejudice from the grant of the motion to amend, nor pointed to any evidence of bad faith on the part of U.S. Pack, we conclude that the district court acted within its discretion in granting U.S. Pack's motion to amend its answer to assert a statute of frauds defense.

### b.      Merits

Plaintiffs further argue that the district court erred when it concluded that the alleged oral agreements to pay 60% commissions could not be performed

within one year and were therefore barred by the statute of frauds. New York's

statute of frauds provides, in relevant part, as follows:

> Every agreement, promise or undertaking is void, unless
> it or some note or memorandum thereof be in writing,
> and subscribed by the party to be charged therewith, or
> by his lawful agent, if such agreement, promise or
> undertaking:
>
> 1. By its terms is not to be performed within one year
> from the making thereof or the performance of which is
> not to be completed before the end of a lifetime[.]

N.Y. Gen. Obl. Law § 5-701(a).

New York courts generally construe the statute of frauds narrowly, voiding

only those oral contracts "which by their very terms have absolutely no

possibility in fact and law of full performance within one year." *D & N Boening,*

*Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 454 (1984). Indeed, "[w]herever an

agreement has been found to be susceptible of fulfillment within that time, in

whatever manner and however impractical, [the New York Court of Appeals] has

held the one-year provision of the Statute to be inapplicable, a writing

unnecessary, and the agreement not barred." *Id.* at 455.

Plaintiffs do not allege that the oral commission agreements contained an

express termination provision.[31]  They argue, nonetheless, that the agreements were capable of performance within one year, because they were part of an at-will employment agreement, and New York law presumes such agreements may be terminated at any time by either party.  We agree.

Under New York law, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time either party."  *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333 (1987); *see also Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 137 (2d Cir. 2007).  For this reason, New York courts have consistently held that oral employment agreements lacking a fixed duration are not covered by the statute of frauds, because they could theoretically be terminated by either party within one year of their making.  *See, e.g.*, *Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362, 367 (1998) (alleged oral agreement to pay bonuses as part of an at-will employment relationship not barred by statute of frauds); *Hubbell v. T.J. Madden Constr. Co.*, 823 N.Y.S.2d 318, 319 (4th Dep't 2006); *Stucklen v. Kabro Assocs.*, 795 N.Y.S.2d 256, 257

---

[31] Although, as noted *supra* note 7, the 1996 offering prospectus granted U.S. Pack the right to cancel the franchise agreement within six months of the franchise start date for any reason, plaintiffs have not argued that this termination provision was incorporated into their oral agreements.

(2d Dep't 2005); *Air Masters, Inc. v. Bob Mims Heating & Air Conditioning Serv., Inc.,* 752 N.Y.S.2d 388, 389 (2d Dep't 2001).[32]

To support its conclusion that plaintiffs had to allege an express termination provision to relieve the alleged oral commission agreements of the requirements of the statute of frauds, the district court relied on *Burke v. Bevona,* 866 F.2d 532 (2d Cir. 1989). But *Burke* arose from a very different set of facts: there, the plaintiff based his breach of contract claim on his allegation that a union local promised him that he would have a job "for as long as you live," or "for as long as you want, until you retire." *Id.* at 534. Because the alleged lifetime employment agreement in *Burke* was *not* terminable at-will, it would be barred by the statute of frauds unless it had an express termination provision. *Id.* at 538. *Burke* does not purport to overrule the long line of New York cases discussed above. *See, e.g., Berardi v. Fundamental Brokers, Inc.,* Nos. 89 Civ. 5143, 90 Civ. 0646

---

[32] We reject defendants' argument that the oral commission agreements were not part of an employment agreement because plaintiffs presented themselves as "independent contractors" rather than "employees" at the trial of their FSA claims. That plaintiffs opted to proceed on their FSA claims after the erroneous dismissal of their breach of contract and NYLL claims does not preclude them from pursuing the incorrectly-dismissed claims on remand to the district court, so long as those claims rest upon a plausible factual basis. *See, e.g., Kruse v. Wells Fargo Home Mortg., Inc.,* 383 F.3d 49, 55 n.3 (2d Cir. 2004) (noting that the Federal Rules "permit[] pleading inconsistent theories in the alternative"). If plaintiffs do ultimately succeed on their breach of contract and NYLL claims at trial, however, the district court must ensure that plaintiffs do not receive duplicative damages.

(JSM), 1992 WL 27169, at *2-3 (S.D.N.Y. Feb. 5, 1992) (distinguishing *Burke* and holding that an express termination provision was not required to take the oral agreement to pay bonuses to employees outside the statute of frauds).

We conclude, therefore, that with respect to plaintiffs' breach of contract and NYLL claims, the district court erred in granting summary judgment for defendants based on the statute of frauds defense.

## 2.    Waiver Defense

Finally, we briefly address defendants' argument that even if plaintiffs' breach of contract and NYLL claims are not barred by the statute of frauds, we may affirm the district court's grant of summary judgment on the alternative ground that plaintiffs, by their course of conduct, impliedly waived these claims. Waiver is "the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (1982). Implied waiver may be found where a party exhibits "such conduct or failure to act as to evince an intent not to claim the purported advantage." *Hadden v. Consolidated Edison Co. of N.Y.*, 45 N.Y.2d 466, 469 (1978). It is well established, however, that "negligence,

42

oversight, or thoughtlessness" does not create a waiver, and waiver "cannot be inferred from mere silence." *Peck v. Peck*, 649 N.Y.S.2d 22, 23 (2d Dep't 1996).

Defendants assert that plaintiffs knew they were not paid 60% commissions on each delivery but failed to object to the calculation of their commission payments until the filing of this lawsuit. Although plaintiffs' weekly commission statements made no reference to the delivery fees customers paid to U.S. Pack, defendants argue that plaintiffs could have deduced how much customers were paying by "speaking with the customers" or "reading U.S. Pack's advertising materials," Appellants' Reply Br. at 9, and from that data, calculated the amounts they claimed to be owed. They also contend that four plaintiffs (Holesa, Imas, Ondusko, and Szycowski) admitted that they did not believe they were receiving 60% commissions, and yet they continued to deliver packages for U.S. Pack. Therefore, defendants argue, plaintiffs "acquiesced in the way they were being paid" and waived any right to collect 60% commissions. *Id.* at 10.

Based on our review of the record, we conclude that plaintiffs have at the very least raised a genuine issue of fact as to whether they voluntarily and intentionally abandoned their right to collect 60% commissions, thus precluding

us from affirming summary judgment for defendants on this alternative basis. *See*

*Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 685 (2d Cir.

1983) (stating that where waiver is not established "directly, unmistakably or

unequivocally," issue of intent to waive right is "properly left to the trier of fact").

A jury could conclude that plaintiffs, most of whom had limited proficiency in

English, were unaware that they were not receiving 60% commissions. Plaintiffs'

inability or failure to compare U.S. Pack's advertising materials to their

commission statements is at least as consistent with mere "negligence, oversight,

or thoughtlessness," which is not enough to create waiver, as it is with the

"voluntary and intentional abandonment of a known right." The testimony by

Holesa, Imas, Ondusko and Szycowski also fails to establish that those plaintiffs

knew that they were not receiving 60% commission payments *and* voluntarily and

intentionally waived that right.[33] Therefore, the district court's grant of summary

judgment for defendants on the breach of contract and NYLL claims cannot be

---

[33] Although Imas "started suspecting" at the end of the 1990s that he was not receiving 60% commissions, J.A. 451, he also testified that "I have no proof, only suspicions," J.A. 438, and that when drivers asked, "[A]re we still making 60?" at company meetings, Glazman would respond, "[N]othing changed. Everything like used to be." J.A. 438. Holesa and Szycowski testified similarly. Ondusko testified that he began to suspect he was not receiving 60% commissions only "[a]fter the case began." J.A. 614.

upheld under defendants' alternative theory of waiver.

*  *  *  *

In sum, we conclude that the FSA's statute of limitations runs from the inception of the plaintiffs' franchise relationships with defendants. Accordingly, the statute of limitations bars the claims of the six plaintiffs (Holesa, Imas, Maler, Ondusko, Redaj, and Szycowski) who began working for U.S. Pack more than three years before the filing of the complaint. We nevertheless affirm the jury's award of FSA damages to plaintiffs Kroshnyi and McFarland, both of whom filed timely claims. We further conclude, however, that the district court erred in granting summary judgment on plaintiffs' breach of contract and NYLL claims based on the statute of frauds. A jury could find that the oral agreements to pay 60% commissions were employment agreements, presumed terminable at-will, and thus capable of performance within one year. The statute of frauds therefore does not bar their enforcement. We have considered the parties' remaining arguments and find them to be without merit.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment in favor of Kroshnyi and McFarland on their FSA claims, but **REVERSE** the district court's judgment in favor of the other six plaintiffs (Holesa, Imas, Maler, Ondusko, Redaj, and Szycowski). We also **VACATE** the district court's award of attorneys' fees on the FSA claims and **REMAND** for reconsideration and recalculation of the award. Finally, we **VACATE** the district court's grant of summary judgment on the breach of contract and NYLL claims and **REMAND** to the district court for further proceedings consistent with this opinion.